**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 25-cv-01042 (JEB)**

K.L. SMITH,

        Plaintiff,

v.

PETE R. FLORES, et al.,

        Defendants.

---

**RESUBMITTED MOTION FOR WAIVER OF F.R.CIV.P. 65(C) SECURITY
BOND (INCORPORATING AUTHORITY)**

---

Comes now the Plaintiff, *in propria persona*, stating the following in support of this

Motion for Waiver of Security Bond, pursuant to Fed. R. Civ. P. 65(c):

**ARGUMENT**



*In free Governments the rulers are the servants, and the people their superiors
and sovereigns.*

        ~Benjamin Franklin, July 26, 1787

**The Constitution was written for times like these.  It's time to dust it off.**

"This Constitution, and the Laws of the United States which shall be made in Pursuance

thereof; and all Treaties made, or which shall be made, under the Authority of the United

1


**RECEIVED**
JUN 30 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

States, shall be the supreme Law of the Land." *U.S. Const. art. VI, cl. 2*. "Governments are instituted among men, deriving their just powers from the consent of the governed." *Declaration of Independence*, para. 2 (U.S. 1776). As Lincoln famously declared, "no man is good enough to govern another man, without the other's consent," Abraham Lincoln, Speech (on the Kansas-Nebraska Act, Springfield, IL), Oct. 16, 1854, and the Framers' Constitution marks the outer limit of our consent.

Thereunder, "We the People of the United States" write our own laws, pursuant to the processes specified therein. We make the big calls, leaving the day-to-day process of law-making to our legislators. We hire a President to run this leviathan and judges, to resolve disputes. **And we expect our authorized agents to stay in their lanes**: "All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it." *United States v. Lee*, 106 U.S. 196, 220 (1882).

The purpose of our Constitution—and the bedrock of common law upon which it was built—was to enable the people to keep our authorized agents in their lanes. As the incomparable Thomas Jefferson explains,

> In a written constitution, the powers of government are distributed into several hands, and defined with precision, to bind up the several branches of government by certain laws, which, **when they transgress, their acts become nullities**; to render unnecessary an appeal to the people, or in other words a rebellion, on every infraction of their rights, on the peril that their acquiescence shall be construed into an intention to surrender those rights.

Thomas Jefferson, *Notes on the State of Virginia* (Query XIII) 255 (1787 ed.) (emphasis added). And whereas voting was generally adequate for day-to-day control, the prerogative writs were available to remedy official recalcitrance. Habeas remedied unlawful imprisonment. Mandamus forced public officials to perform duties they owed. Certiorari corrected plain judicial error. Scire facias enforced good behavior tenure. And when everything went

totally sideways, the aggrieved citizen enjoyed the right to petition.  And by building on the bedrock of the common law, the Framers minimized the likelihood that the people would be forced to resort to violent revolution to secure their rights.

As a matter of law and logic, a right cannot exist without an effective remedy for its breach, *Ashby v. White* [1703] 92 Eng. Rep. 126, 136 (H.C.), and "[t]o take away all remedy for the enforcement of a right is to take away the right itself." *Poindexter v. Greenhow*, 114 U.S. 270, 303 (1884).  Plaintiff's remedy sounds in *quo warranto*, which "was in the nature of a writ of right for the king, against him who claimed or usurped any office, franchise, or liberty, to inquire by what authority he supported his claim, in order to determine the right." 3 Black-stone, *Commentaries* * 262.[1]  Where the source of harm is public officials acting outside of the scope of their lawful authority, violence would not be an act of rebellion but rather, action

---

[1] This begs the question of who the King is in a country without a King.  Justice Story provides the answer: "The constitution of the United States was ordained and established, not by the states in their sovereign capac-ities, but emphatically, as the preamble of the constitution declares, by **'the people** of the United States.'" 1 J. Story, *Commentaries on the Constitution of the United States* § 327 (1833) (emphasis added). Therefore, as the *jura summa imperii* rests with the people, held as tenants-in-common, any citizen adversely affected by usurped authority has standing to wield it.  That this writ has fallen into desuetude is a testament to how well our government has worked heretofore.

The All-Writs Act authorizes federal courts to issue all writs necessary in aid of their jurisdiction: "[A]ll the before-mentioned courts of the United States shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." Judiciary Act of 1789, § 14, 1 Stat. 73, 81-82. While *quo warranto* is not explicitly named, the phrase "all other writs" is broad and inclusive. At the time of the Act's passage in 1789, *quo warranto* was a well-known common law writ, alongside mandamus, certi-orari, and prohibition. *See United States v. Morgan*, 346 U.S. 502, 506 (1954) (acknowledging writ of coram nobis). The Act's language establishes that Congress intended to preserve the full arsenal of common law writs unless explicitly restricted, provided they serve the courts' jurisdictional needs and align with legal tradition.

It is well-established that "[t]he common law ... ought not to be deemed to be repealed, unless the language of a statute be clear and explicit for this purpose." *Fairfax's Devisee v. Hunter's Lessee*, 11 U.S. 603, 623 (1813). Statutes invading the common law "are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident [and] to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993) (quotations and citations omitted). Congress has not explicitly abolished it, and probably couldn't if it wanted to, as it exceeds its enumerated powers.  *See Marbury v. Mad-ison*, 5 U.S. at 177.  *Quo warranto* safeguards our liberty by allowing challenges to usurped or unlawfully held authority—**as is alleged here**—and as such, is an unenumerated fundamental right retained by the citizenry, by virtue of the Ninth and Tenth Amendments.  *See* 1 Annals of Congress 452, 456 (1789) (stmts. of Rep. Madison).

taken in support and defense of "the Constitution and laws of the United States of America against all enemies, foreign **and domestic**." 8 C.F.R. § 337.1 (emphasis added).[2]  But at the risk of reiterating the obvious, any reading of the law that precipitates it is one best studiously avoided.  *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

## A.  Plaintiff is Likely to Succeed on the Merits



Defendant Donald John Trump had previously taken an oath as President "to support the Constitution of the United States," and was found by a competent court upon a trial on the merits via clear and convincing evidence that he had engaged in insurrection, as that term is used in Section 3 of the Fourteenth Amendment.  *Anderson v. Griswold*, No. 23CV32577, ¶¶ 241, 298 (Dist. Ct., City & Cnty. of Denver, Nov. 17, 2023).  Thus as a matter of law and in accordance with established precedent,[3] Trump cannot serve as our President unless and until Congress affirmatively removes that disability.

---

[2] "Violence," wrote Isaac Asimov, "is the last refuge of the incompetent," Isaac Asimov, *Foundation* 58 (1951), but one would hardly dare call George Washington, Ben Franklin and Thomas Jefferson that. The better rule is that one only resort to violence at great need and then, only after all alternatives are exhausted. See e.g., Declaration of the Causes and Necessity of Taking Up Arms (U.S. 1775).

[3] Upon the readmission of Georgia to representation, Nelson Tift was elected as a Democrat to the Fortieth Congress. The Fourteenth Amendment was ratified on July 9, 1868—presumably, while Tift was *en route*. But rather than remove Tift's disability, Congress passed a private bill **enabling him to serve out that Term— but no more**. "Congress enacted a private bill to remove the Section 3 disability of Nelson Tift of Georgia, who had recently been elected to represent the State in Congress. See ch. 393, 15 Stat. 427. Tift took his seat in Congress immediately thereafter. See Cong. Globe, 40th Cong., 2d Sess., 4499-4500 (1868)." *Trump v. Anderson*, 601 U.S. 100, ___, 144 S. Ct. 662, 669 & n.2.  But Georgia sent six secessionists to the Forty-First Congress which the members refused to seat, including Nathan Tift. Biographical Directory: Forty-First

In John Adams' "government of laws, and not of men," that short paragraph would be dispositive. But after two hundred years of judicial erosion, Plaintiff is not certain what, if anything, of our Constitution and rule of law is left.  Examples could fill a Brandeis brief, but *Alden v. Maine*, 527 U.S. 706 (1999) (rewriting Eleventh Amendment), is an especially poignant illustrative example, as the majority adopted the version the Amendment's framers explicitly rejected, and a Supreme Court Justice does the illustrating. John Paul Stevens, *"Two Questions About Justice,"* 2003 Ill. L. Rev. 821.

This is but one of over a hundred reasons why Plaintiff must downgrade to "likely."

## B.  Plaintiff Is Suffering Immediate Harm

1.  Governmental Impairment of Access to Information

At the risk of showing my age, Plaintiff remembers when there were three things you read in the morning—the *Times*, the *Post*, and the *Journal*.  News was news, and journalists spoke truth to power.  *See e.g., New York Times Co. v. United States,* 403 U.S. 713 (1971) (Pentagon Papers case).  In America's halcyon days, news outlets weren't the side-hustles of petulant centi-billionaires with mommy issues.  But while *caveat emptor* was always the rule in news consumption, the First Amendment meant that the government we are charged with monitoring and controlling couldn't place its obese finger on the news scale. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976).  Sadly, that is no longer the case, as cowardly news outlets and even *law firms* have chosen the path of "anticipatory obedience." Timothy Snyder, 20 Lessons from the 20th Century (pamphlet), Nov. 15, 2016.

---

Congress at 179 & fn. 11, https://www.govinfo.gov/content/pkg/GPO-CDOC-108hdoc222/pdf/GPO-CDOC-108hdoc222-3-41.pdf.



**This** is how I define "immediate harm."

2. <u>Defendant Trump is Unlawfully Wreaking Unfathomable Havoc</u>

While the Defendants' impairment of Plaintiff's First Amendment right to receive information is a clear and well-established golden ticket to federal court, we (ostensibly still) live in a republic, replete with robust legal guardrails. And these "guardrails" ultimately sound in agency. As Alexander Hamilton explains,

> There is no position which depends on clearer principles, than that every act of a delegated authority, contrary to the tenor of the commission under which it is exercised, is void. No … act therefore contrary to the constitution can be valid. To deny this would be to affirm that the deputy is greater than his principal; that the servant is above his master; that the representatives of the people are superior to the people themselves; that men acting by virtue of powers may do not only what their powers do not authorise, but what they forbid.

*The Federalist* No. 78, 438 (Alexander Hamilton) (I. Kramnick ed. 1987).

Defendant Trump cannot be our President—not because Plaintiff says so, but because the Constitution says so. And whether it is the depredations of DOGE, the imposition of tariffs, or the issuance of pardons for criminal co-conspirators, only an authorized agent can act on our behalf. This Court has a duty to exercise its powers, and time is of the essence.

**C. The Balance of Equities Favors Plaintiff**

If Plaintiff loses this argument, he hasn't just lost a court case; we lost a Republic. Luigi Mangione can't be our President, not because he faces felony charges, but because the

Constitution says so. U.S. Const. art. II, § 1, cl. 5. Donald Trump can't be our President, not because he is a convicted felon, but because **the Constitution says so**. U.S. Const. amend XIV, § 3.  We are either governed by laws or by men, *Marbury v. Madison*, 5 U.S. at 177, and this Court will have to pick a lane.

## D.  This Is Not About Me



Robert the Bruce. Luther.  Luther.  Lincoln. Churchill.  Rosa Parks. Zelenskyy.  The times make the man, and the man makes the times. Adversity doesn't build character; it reveals it.



Plaintiff harbors no illusions.  He is just a humble pensioner who, thanks to the arrogance of a ketamine-besotted billionaire, will now have to wait several months for his first Social Security check.  And in America, you only have as many rights as you can afford.  Equal justice is as inaccessible for most Americans as the frieze at One First Street.  But that is almost beside the point.

This isn't about Plaintiff.  Or even America.  This is about the world.



Plaintiff is not so totally destitute that he must file *in forma pauperis*, but Paul, Weiss and Skadden, Arps are too busy these days working for the DonFather to help.  Show me a *pro se* litigant, and I'll show you a man who ran out of money to pay for lawyers, and has no practical alternative.   If justice requires a bond no honest man can afford, then justice is for sale. That is not law—it is extortion.[4] And that having been said, if anyone should have to post a bond, it is the man who caused this:



---

[4] Courts permit a waiver of security when the public interest demands it.  *See e.g., Natural Resources Defense Council, Inc. v. Morton*, 337 F.Supp. 167, 168-69 (D.D.C.1971), *aff'd on other grounds,* 458 F.2d 827 (D.C.Cir.1972), see also, e.g., *People ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325–26 (9th Cir. 1985); *Crowley v. Local No. 82,* 679 F.2d 978, 1000 (1st Cir. 1982).



The **Dow Jones** has been open for 48 minutes and has already dropped 1,100 points & Over $1.65 trillion wiped out from the US #stockmarket at open.

If a significant bond is required, then justice must bow to wealth; with profound regret, this lowly serf will be forced to decline. Indeed, not even *President Musk* could post an adequate bond.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the statutory bond requirement be waived.

Respectfully resubmitted this 30th day of June, 2025,



K.L. Smith
3649 Evergreen Pkwy. #504
Evergreen, CO. 80437-0504
Manncoulter.fox@gmail.com
(720) 551-2488

9